**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:11-cv-00412-CMA-MEH
**(Consolidated)**

MICHAEL WOOTEN, et al., Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

EMERGENCY MEDICAL SERVICES CORPORATION,
CLAYTON, DUBILIER & RICE, LLC,
ONEX CORPORATION,
WILLIAM A. SANGER,
ROBERT M. LeBLANC,
STEVEN B. EPSTEIN,
PAUL B. IANNINI,
JAMES T. KELLY,
MICHAEL L. SMITH,
KEVIN E. BENSON and
LEONARD RIGGS, JR.,

    Defendants.

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

666415_1

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 23, Colorado Federal Plaintiffs respectfully move this Court for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), submitted herewith. The Notice Order will: (a) preliminarily approve the settlement set forth in the Stipulation of Settlement dated as of November 28, 2011 ("Stipulation"),[1] which is submitted herewith; (b) certify a Settlement Class consisting of all Persons who were record holders or beneficial owners of Emergency Medical Services Corporation ("EMSC" or the "Company") common stock at any time from December 13, 2010, through and including May 25, 2011; and (c) approve the mailing of the Notice of Settlement of Class Action ("Notice").

As explained herein, Lead Counsel are satisfied that the proposed settlement is in the best interests of the Settlement Class and respectfully request the Court to preliminarily approve the settlement and enter the Notice Order as submitted. In accordance with Local Rule 7.1, counsel for the parties have conferred regarding this motion, and Defendants do not oppose the relief requested herein.

The settlement set forth in the Stipulation reflects the results of the Settling Parties' arm's-length negotiations. During the negotiations, all parties were represented by counsel with extensive experience and expertise in shareholder class action litigation. Colorado Federal Plaintiffs, Colorado State Plaintiffs, and their counsel have concluded that the

---

[1] Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Stipulation. The Court is respectfully referred to the Stipulation at Section I for a description of the procedural history of the Released Actions.

- 1 -

Additional Disclosures in the Proxy and provided to EMSC shareholders gave them material information sufficient to cast an informed vote on the Merger or seek appraisal of their shares. Defendant EMSC has acknowledged that the efforts of Plaintiffs' Counsel were a substantial cause of its decision to make the Additional Disclosures contained in the Proxy.[2] As a result, Colorado Federal Plaintiffs, Colorado State Plaintiffs, and their counsel believe that the settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## II.   THE SETTLEMENT

The Additional Disclosures included, among other things, material information concerning the financial analyses performed by Goldman Sachs in connection with the Merger. The disclosure of this information was material because it enabled EMSC shareholders to better understand the financial analyses provided by the Board of Director's ("Board") financial advisor and to more accurately determine what, if any, weight to place upon the fairness opinions in making their voting decision in connection with the Merger. As Vice Chancellor Strine stated in *In re NetSmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203-04 (Del. Ch. 2007), "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed."

---

[2]   Defendants deny, however, that the preliminary proxy statements filed with the SEC and provided to EMSC shareholders were incomplete or in any way misleading or that any additional disclosure was required. Defendants also deny the other claims alleged by Plaintiffs.

The Additional Disclosures also provided material information about the amount of Goldman Sach's fee that was contingent upon completion of the Merger, details regarding the services performed by Goldman Sachs for CD&R during the two years prior to February 13, 2011 and the relative size of the fees for those services.  The failure to adequately disclose, conflicts of interest is a "material defect 'as a matter of law'" that has the effect of "thwarting the informed decision" by shareholders. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384 n.6 (1970), *see also In re Tele-Commc'ns, Inc. S'holders Litig.*, No. 16470, 2005 Del. Ch. LEXIS 206, at *41 (Del. Ch. Dec. 21, 2005).

The Additional Disclosures further provided material information regarding the number of financial buyers that were initially selected by EMSC's Board to participate in the sales process and the reasons that financial buyers, but not strategic buyers, were initially allowed to participate in the sales process.  The disclosure of this information was material because it enabled EMSC shareholders to better understand the Board's process in determining to approve the Merger and whether the Board adequately informed itself and pursued all options to get the best deal it could, thus putting shareholders in a position to determine whether they agreed with the Board's assessment.  *See NetSmart*, 924 A.2d at 209 n.120 ("[w]hen directors describe their decision – making process leading up to a merger, they must do so in a fair and balanced way").

On November 28, 2011, the parties executed the Stipulation, which contains the terms of the settlement, including the manner and form of the Notice to be given to the Settlement Class, the conditions for the settlement to become effective, and the releases to be provided by the parties.  The Stipulation also sets forth the parties' agreement regarding

- 3 -

666415_1

attorneys' fees and expenses, which the parties negotiated only after reaching an agreement on the substantive terms of the settlement. Pursuant to the fee agreement reached by the parties, EMSC (or its successor(s)-in-interest), on behalf of itself and for the benefit of the other Defendants, has agreed to pay an award of attorneys' fees and expenses to Plaintiffs' Counsel of $900,000.00, subject to this Court's approval.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is especially true in complex actions such as this. *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. At the ***final*** approval hearing, the Court will have before it extensive papers submitted in support of the proposed settlement and will be asked to make a determination as to whether the settlement is fair, reasonable, and adequate under all of the circumstances. *See* Fed. R. Civ. P. 23(e)(2). At this juncture, however, the parties request only that the Court grant ***preliminary*** approval of the settlement. The procedure for preliminary approval is well established.

> If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the ***second step*** in the review process, the ***fairness hearing***.

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (emphasis added; *accord* 4 Herbert B. Newberg, *Newberg on Class Actions* §11:25, at 38 (4th ed. 2002).

The parties are requesting the Court to take the first step in this process and "determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with the fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The proposed settlement here satisfies the standard for preliminary approval because it is "'within the range of possible approval.'" *Armstrong*, 616 F.2d at 314 (citation omitted). The settlement is beneficial to the Settlement Class under the circumstances, providing them with additional material information concerning the Merger, which allowed them to make a more fully informed decision concerning the Merger.

Reference to factors considered by courts in granting final approval of class action settlements demonstrates that this settlement is well within the range of possible approval. *See Lucas*, 234 F.R.D. at 693 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)) (on preliminary approval motion, considering (i) whether the settlement was fairly and honestly negotiated, (ii) if serious questions of law and fact placed the outcome of the litigation in doubt, (iii) whether the value of an immediate recovery outweighed the mere possibility of a later recovery, and (iv) the judgment of the parties that the settlement is fair and reasonable).

First, the terms of the settlement are the product of extensive negotiations between the parties. The negotiations were at all times hard fought and at arm's length. Second, Colorado Federal Plaintiffs, through their counsel, having considered and evaluated, *inter alia*, the relevant legal authorities and evidence adduced to date, the risk, expense, and duration of continued litigation, have concluded that the settlement is clearly fair,

reasonable, and adequate and in the best interest of the Settlement Class.[3] Lead Counsel have significant experience in complex class action litigation and have negotiated numerous other class action settlements throughout the country. *See* www.rgrdlaw.com. It is well established that significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the class.[4]

The settlement achieved substantial non-monetary benefits for Settlement Class Members that address Colorado Federal Plaintiffs' claims. It is a fundamental tenet of corporate law that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval. *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (it is a "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action"); *see also*, *Mills*, 396 U.S. at 395-96. Benefits such as those obtained in the proposed settlement have frequently provided the basis for the resolution of shareholders' claims in courts nationwide.

---

[3] *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

[4] *See Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) (opinion of experienced counsel is entitled to considerable weight). *See also N.M. Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1506 (D. Colo. 1984) (placing "great weight" on recommendation by class counsel that the proposed settlement should be approved by the court as fair and reasonable).

The benefits of this settlement must also be balanced against the expense and delay of litigating numerous pre-trial disputes. While Colorado Federal Plaintiffs believe that their claims have substantial merit, Defendants' liability was by no means a foregone conclusion. The outcome of the Colorado Federal Action was uncertain and, were the case to proceed, Defendants would argue that they exercised valid "business judgment" with respect to all aspects of the Merger. The presumption of the business judgment rule favors defendants and creates a significant risk that Colorado Federal Plaintiffs would not have prevailed. Despite these risks, the settlement has provided shareholders with a portion of the relief sought by providing material information that enhanced each shareholder's ability to make a more fully informed decision on the Merger.

An evaluation of the benefits of the settlement must be tempered by the recognition that any compromise involves concessions on the part of the settling parties. Indeed, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted).

While the parties believe the settlement merits final approval, the Court need not make that determination at this time. The Court now is being asked only to permit notice of the terms of the settlement to be given to the Settlement Class and to set a schedule on matters pertaining to the notice and the hearing on the fairness of the settlement.

**IV.   CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER**

As part of the settlement, the parties have agreed to the certification of a Settlement Class defined as

a non-opt out class for settlement purposes, pursuant to Rules 23(b)(1) and 23(b)(2) of the Federal Rules of Civil Procedure, comprised of all Persons who were record holders or beneficial owners of EMSC common stock at any time from December 13, 2010, through and including May 25, 2011 (the effective date of the Merger), including any and all of their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them.  Excluded from the Settlement Class are Defendants and their officers, directors, and majority-owned affiliates, as well as members of the immediate family of any Individual Defendant, and the legal representatives, heirs, successors or assigns of any such excluded Person.

Class certification for settlement purposes is appropriate here because the four prerequisites of Rule 23(a) are met, and the requirements of Rules 23(b)(1) and 23(b)(2) are satisfied.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  The numerosity requirement is easily satisfied here: at the time of the Merger, EMSC had millions of shares outstanding owned by hundreds, if not thousands, of holders who are members of the Settlement Class.  Although no bright line numerical test applies, when class size reaches substantial proportions the numerosity requirement is usually satisfied by this magnitude of numbers.  *See In re Ribozyme Pharms., Inc. Sec. Litig.*, 205 F.R.D. 572, 578 (D. Colo. 2001) (the numerosity requirement is assumed to be satisfied in the case of a nationally traded security).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Here, the complaint charges that Defendants breached their fiduciary duties to EMSC shareholders in connection with the Merger.  These allegations give rise to common issues of law and fact.  Where, as here, the allegations of wrongdoing involve a common course of

conduct, class members' claims will clearly involve common questions of law and fact. *See Ribozyme*, 205 F.R.D. at 578.

Rule 23(a)(3) requires that plaintiffs' claims be typical of the class's claims. Here, Colorado Federal Plaintiffs' claims are typical because "the claims brought by the Lead Plaintiffs arise out of the same course of conduct by Defendants and rest on exactly the same legal theory, securities fraud, as those of the potential class members." *Ribozyme*, 205 F.R.D. at 578.

Rule 23(a)(4) requires that the plaintiffs fairly and adequately protect the interests of the class. This requirement is comprised of two factors: (1) that the class representatives' attorneys are qualified, experienced, and generally able to conduct the litigation; and (2) that the suit is not collusive, and plaintiffs' interests are not antagonistic to those of the other members of the class. *Ribozyme,* 205 F.R.D. at 578. Lead Counsel have extensive experience in securities class action litigation and have successfully prosecuted numerous class actions in this District and throughout the country. In addition, there is no antagonism between the Colorado Federal Plaintiffs and the Settlement Class. Colorado Federal Plaintiffs and all Settlement Class Members have allegedly been subjected to the same course of conduct by Defendants.

In addition, the requirements of both Rules 23(b)(1) and 23(b)(2) are satisfied:

> (b) ***Types of Class Actions***. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > (1) prosecuting separate actions by or against individual class members would create a risk of:
> >
> > > (A) inconsistent or varying adjudications with respect to individual class members that would establish

> incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Here, Plaintiffs allege that Defendants breached their fiduciary duties in connection with the Merger. If not for class certification there would be a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants and would also create a risk that adjudication with respect to an individual's claim would substantially impede a class member's rights who was not a party to the individual action. As in this case, the claims asserted also involve a large number of investors who are geographically dispersed, and whose relatively small claims make it prohibitively expensive to prosecute their claims through individual litigation. *See Ribozyme*, 205 F.R.D. at 579. In addition, Plaintiffs allege that Defendants acted on grounds generally applicable to all Settlement Class Members.

## V.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the settlement and the signing of the Notice Order, the Court must set dates for mailing of the Notice, the filing of supporting briefs, and deadlines for objecting to the settlement. The Colorado Federal Plaintiffs suggest the following schedule:

- 10 -

666415_1

| Event | Proposed Timing |
|---|---|
| Notice mailed to Settlement Class ("Notice Date") | Fourteen (14) calendar days after the Court enters the Notice Order ("Notice Date") |
| Briefs in support of settlement approval due | On or before fourteen (14) calendar days prior to the date for objections |
| Deadline for objections to the settlement | Fifty (50) calendar days from the Notice Date |
| Reply papers in support of the settlement due | Seven (7) calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, at least ninety (90) calendar days after the Notice Date |

## VI.   CONCLUSION

For all of the foregoing reasons, Colorado Federal Plaintiffs submit that the proposed settlement is a fair and reasonable compromise of the issues in dispute and warrants this Court's preliminary approval.

DATED:  November 28, 2011                    Respectfully submitted,

  s/ Jeffrey A. Berens
  ————————————————
  JEFFREY A. BERENS

Robert J. Dyer III
Jeffrey A. Berens
DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

Randall J. Baron
A. Rick R. Atwood, Jr.
Jeffrey D. Light
David T. Wissbroecker
Edward M. Gergosian
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
randyb@rgrdlaw.com
ricka@rgrdlaw.com
jeffl@rgrdlaw.com
dwissbroecker@rgrdlaw.com
egergosian@rgrdlaw.com

Richard A. Maniskas
RYAN & MANISKAS, LLP
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)
rmaniskas@rmclasslaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants as identified on the Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants as indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 28, 2011.

s/ Jeffrey A. Berens
Jeffrey A. Berens
DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)
jeff@dyerberens.com
