**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:11-cv-00412-CMA-MEH
**(Consolidated)**

MICHAEL WOOTEN, et al., Individually and on Behalf of All Others Similarly Situated,

     Plaintiffs,

v.

EMERGENCY MEDICAL SERVICES CORPORATION, et al.,

     Defendants.

---

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

---

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    THE SUBSTANTIAL BENEFITS OF THE SETTLEMENT ..................................... 3

III.   THE STANDARDS FOR APPROVAL OF CLASS ACTION
SETTLEMENTS ................................................................................ 4

     A.     The Settlement was Fairly and Honesty Negotiated ................................... 5

     B.     Serious Questions of Law and Fact Existed that Created Significant
Risk of Obtaining a More Favorable Result After Continued
Litigation ................................................................................ 5

     C.     The Recommendation of Experienced Counsel Weighs Heavily in
Favor of Approval of the Settlement ........................................................ 7

IV.   THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES
SHOULD BE APPROVED .................................................................... 8

     A.     Negotiated Fees Are Encouraged by the Courts ....................................... 8

     B.     The Substantial Benefits Conferred on the Settlement Class
Strongly Support the Award of Fees and Expenses ................................. 10

V.    CONCLUSION ................................................................................ 11

679843_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alvarado Partners, L.P. v. Mehta*,
  723 F. Supp. 540 (D. Colo. 1989) ............................................................................7

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ........................................................................................6

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
  906 A.2d 114 (Del. 2006) ........................................................................................6

*Carmona v. Bryant*,
  No. CV OC 0601251, slip op. (Ada Cnty. Idaho Mar. 9, 2007) ..............................9

*Diaz v. Romer*,
  801 F. Supp. 405 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993) ....................4

*Dorn v. Mueller*,
  No. 10-cv-00925-WYD-CBS, slip op. (D. Colo. Feb. 28, 2011) ............................9

*Dow Jones & Co. v. Shields*,
  No. 184, 1991, 1992 WL 44907 (Del. Ch. Mar. 4, 1992) ......................................10

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993) ...........................................................................4, 5, 6

*Hall v. Cole*,
  412 U.S. 1 (1973) ....................................................................................................10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................................8

*IBEW Local 164 Pension Fund v, Hewitt Assocs., Inc.*,
  No. 10 CH 31612, slip op. (Cook Cnty. Ill. Feb. 15, 2011) ..................................10

*In re AMC Entm't, Inc. S'holder Litig.*,
  No. 04-CV-220931, slip op. (Jackson Cnty. Mo. Dec. 2, 2005) ...........................10

*In re Cont'l III Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1982) ....................................................................................8

**Page**

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976)........................................................................4

*In re Longs Drug Stores Corp. S'holder Litig.*,
    No. C-08-02093, slip op. (Contra Costa Super. Ct. Mar. 26, 2009) .........................9

*In re NetSmart Techs., Inc. S'holders Litig.*,
    924 A.2d 171 (Del. Ch. 2007)...........................................................................4

*In re Resorts Int'l S'holders Litig.*,
    No. 9470, 1990 WL 154154 (Del. Ch. Oct. 11, 1990)............................................9

*In re Talley Indus., Inc. S'holders Litig.*,
    No. Civ.A. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998) ....................4, 7, 11

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001).........................................................................8

*Mills v. El. Auto-Lite Co.*,
    396 U.S. 375 (1970)........................................................................................4

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................8

*Rosenblatt v. Getty Oil Co.*,
    493 A.2d 929 (Del. 1985) ................................................................................3

*Sugarland Indus. v. Thomas*,
    420 A.2d 142 (Del. 1980) ..............................................................................10

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) .............................................................................11

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976).................................................................................3, 10

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) ........................................................................4

679843_1

**Page**

*Wis. Inv. Bd. v. Bartlett*,
    No. 17727, 2002 WL 568417 (Del. Ch. Apr. 9, 2002),
    *aff'd*, 808 A.2d 1205 (Del. 2002)............................................................................................10

## STATUTES, RULES AND REGULATIONS

Colorado Local Civil Rules
    Rule 7.1 ...........................................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................................1
    Rule 23(e)........................................................................................................................4

679843_1

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, plaintiffs submit this memorandum in support of their motion for final approval of class action settlement.[1]  The terms of the settlement are set forth in the Stipulation of Settlement ("Stipulation"), previously submitted to the Court.[2]

Plaintiffs' counsel believe that the settlement is a highly favorable result of this complex litigation and that the benefits that would have been sought by any injunction were in fact achieved through the disclosure of previously omitted material information concerning the Merger, which was demanded by plaintiffs and which defendants disclosed in a definitive merger proxy statement ("Proxy") that was filed with the U.S. Securities and Exchange Commission ("SEC") on or about April 22, 2011.  *See* paragraph 6 to the accompanying Declaration of A. Rick Atwood, Jr. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Atwood Decl.").[3]  Plaintiffs' counsel vigorously pursued this litigation from its inception.  Plaintiffs' counsel, among other things, conducted an extensive investigation of defendants' actions in connection with the proposed sale of

---

[1]   In accordance with Local Rule 7.1, counsel for the parties have conferred regarding this motion, and defendants do not oppose the relief requested.

[2]   The Actions sought equitable relief and were brought to challenge the merger that arose out of the February 14, 2011 announcement that Emergency Medical Services Corporation ("EMSC" or the "Company") and an affiliate of Clayton, Dubilier & Rice, LLC ("CD&R") had entered into an Agreement and Plan of Merger pursuant to which EMSC would be merged into CD&R for $64 per share (the "Merger").

[3]   The Court is respectfully referred to the Atwood Declaration for a detailed description of the factual and procedural history of the Actions, the additional disclosures obtained, and the substantial benefits of those disclosures.

the Company over a truncated time frame; aggressively pursued discovery resulting in the review and analysis of hundreds of thousands of pages of documents from defendants and third parties, including the Board's financial advisors; took five fact depositions; prepared and filed a motion for preliminary injunction; consulted with a financial expert; and demanded that defendants fully disclose all material information.

As demonstrated herein and in the Atwood Declaration, plaintiffs' counsel expended a substantial effort over a necessarily short period of time in reaching this settlement.  As a result of those efforts, plaintiffs' counsel were able to secure significant disclosures ("Additional Disclosures") for EMSC shareholders that enabled them to cast a fully informed vote on the Merger and determine whether to exercise their appraisal rights.  It is a deep-seated precept of the securities laws that shareholders are entitled to be fully informed of all material facts pertaining to transactions that require their approval.  These disclosures, which are set forth in more detail in the Atwood Declaration (¶¶33, 38-42) and Stipulation (¶2.2), include material information regarding the sales process for the Company, the financial analyses performed by the Company's financial advisor in reaching its fairness opinions, and potential conflicts of interest of the Company's financial advisor.  As Matthew Morris, a partner of RGL Forensics, opines, "the financial disclosures [included in the Proxy] represented a substantial benefit to the Company's shareholders in their evaluation of the Acquisition and the consideration it offered and whether to support the Acquisition."[4]

---

[4]     *See* paragraph 10 to the accompanying Declaration of Matthew Morris in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Morris Decl.").

- 2 -

The Stipulation also sets forth the parties' agreement regarding attorneys' fees and expenses, which the parties negotiated only after reaching agreement on the substantive terms of the settlement.  As a result of these negotiations, EMSC (or its successor(s)-in-interest), on behalf of itself and for the benefit of the other defendants, has agreed to pay, or cause to be paid to, plaintiffs' counsel attorneys' fees and expenses of $900,000, subject to Court approval.

## II.    THE SUBSTANTIAL BENEFITS OF THE SETTLEMENT

The settlement on the terms set forth in the Stipulation was reached only after arm's-length negotiations between the parties who were all represented by counsel with extensive experience and expertise in shareholder class action litigation.  Atwood Decl., ¶32.  The filing and prosecution of the Actions and the efforts of plaintiffs' counsel were a substantial cause of EMSC's decision to make the Additional Disclosures contained in the Proxy that were sought in the Actions.   Stipulation, ¶2.1. It is a basic tenet of corporate law that companies are required to fully and fairly disclose all material information within their control when they seek shareholder action. *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985).   This requires disclosure of all facts that would be considered by the reasonable shareholder, even though such facts might not cause that shareholder to change his or her vote.  *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Here, plaintiffs' counsel ensured that EMSC's shareholders were provided with material information concerning the Merger giving them "the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and

- 3 -

remedial decisions based on their own economic self-interest." *In re NetSmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007).

Disclosure benefits similar to those obtained here have frequently provided the basis for class-wide resolution of shareholder claims nationwide. *See Mills v. El. Auto-Lite Co.*, 396 U.S. 375 (1970). In *In re Talley Indus., Inc. S'holders Litig.*, No. Civ.A. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998), the court in approving a settlement comprised of additional disclosures noted that these disclosures provided "substantial . . . benefit[s] to the members of the class." As discussed in the Morris and Atwood Declarations, the Additional Disclosures contained in the Proxy provided substantial benefits to Members of the Settlement Class.

## III.  THE STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Courts have long held that the settlement of disputed claims is favored as a public policy matter, particularly in the context of class action litigation. *See Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993). For these reasons, in evaluating the fairness of a settlement, courts should neither decide the merits of the case nor substitute their judgment for that of the parties who negotiated the settlement. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).[5]

A class action settlement is entitled to final approval under Rule 23(e) of the Federal Rules of Civil Procedure where it is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11

---

[5]    *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not, decide the merits of the controversy").

F.3d 1004, 1014 (10th Cir. 1993).  In *Gottlieb*, the Tenth Circuit identified the following four factors which a district court should consider in assessing the fairness of a class action settlement:  (i) whether the settlement was fairly and honestly negotiated; (ii) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (iii) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (iv) the judgment of the parties that the settlement is fair and reasonable.  *Id*.  As set forth herein and in the Atwood and Morris Declarations, the settlement is a favorable result and satisfies the factors identified by the Tenth Circuit in *Gottlieb*.

### A.    The Settlement was Fairly and Honesty Negotiated

One of the factors highlighted by the Tenth Circuit as critical to any assessment of the merits of a settlement – whether the proposed settlement was fairly and honestly negotiated – fully supports the conclusion that the settlement merits the court's approval. *See Gottlieb*, 11 F.3d at 1014.  Where, as here, the settlement negotiations were at arm's length between experienced counsel, the settlement is deserving of the Court's approval. *See* Atwood Decl., ¶¶30-33, 35 for a more detailed description of the settlement negotiations.

### B.    Serious Questions of Law and Fact Existed that Created Significant Risk of Obtaining a More Favorable Result After Continued Litigation

The second and third factors indentified by the Tenth Circuit, whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt, and whether the value of an immediate recovery outweighs the mere possibility of future relief

- 5 -

after protracted and expensive litigation fully support approval of the settlement.  *See*

*Gottlieb*, 11 F.3d at 1014.  This complex shareholder litigation presented a panoply of

complex factual and legal issues making its outcome uncertain at best.  Prior to reaching

this settlement, plaintiffs' counsel had obtained sufficient information to weigh the benefits

of the settlement against the risks of continued litigation.  Atwood Decl., ¶¶8-9, 11.  As

discussed herein, the settlement provides substantial benefits to EMSC shareholders that

allowed them to cast a fully informed vote on the Merger and determine whether to exercise

their appraisal rights.

This settlement is an excellent alternative to continued litigation.  While plaintiffs'

counsel weighed the costs and benefits of litigating this matter after the close of the

Merger, defendants would argue that they exercised valid "business judgment" with respect

to all aspects of the Merger.[6]  Atwood Decl., Atwood Decl., ¶6.  Defendants would contend

that pursuant to the business judgment rule, the corporate directors are presumed to have

"'acted on an informed basis, in good faith and in the honest belief that the action taken

was in the best interest of the company.'"  *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906

A.2d 114, 120 (Del. 2006) (citation omitted). "Absent an abuse of discretion, [the] judgment

will be respected by the courts."  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).  The

business judgment rule favors defendants and created a significant risk that plaintiffs would

not have prevailed.

---

[6]     Plaintiffs' counsel, in consultation with their financial expert, ascertained that the consideration offered by CD&R was "within a reasonable range."  Morris Decl., ¶7, Atwood Decl., ¶5.

679843_1

Importantly, the settlement obtained for shareholders much of the relief sought in the Actions by providing significant material information that enhanced shareholders' ability to make a fully-informed decision on the Merger.  Atwood Decl., ¶50.  As the court in *Talley* aptly observed, "the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process."  *Talley*, 1998 WL 191939, at *15.  Plaintiffs' counsel weighed the uncertainty, delay, and expense of continued litigation against the likelihood of obtaining a better result after continued litigation and determined that the settlement provided EMSC shareholders with substantial benefits that directly address the claims and relief sought in the litigation, and "provided the best and perhaps only relief available to shareholders."  Atwood Decl., ¶¶6, 10.

### C.  The Recommendation of Experienced Counsel Weighs Heavily in Favor of Approval of the Settlement

Courts have long recognized that the opinion of experienced counsel who litigated the case, negotiated the compromise, and support the settlement is entitled to considerable weight.  *See Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989).  Here, plaintiffs' counsel have extensive experience in shareholder class action in general, and merger and acquisition cases in particular, having prosecuted numerous similar actions in courts nationwide.  Counsel used that expertise and experience to efficiently and effectively prosecute this litigation, reaching a highly favorable result for EMSC shareholders.

679843_1

**IV.    THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED**

**A.    Negotiated Fees Are Encouraged by the Courts**

Plaintiffs' counsel's efforts in filing and prosecuting the Actions conferred substantial benefits on EMSC shareholders. *See generally* Morris Decl., Atwood Decl., ¶¶6, 7, 38-48. After arm's-length negotiations concerning the principal terms of the settlement, the parties reached an agreement that EMSC (or its successor(s)-in-interest), on behalf of itself and for the benefit of the other defendants, would pay $900,000 to plaintiffs' counsel in the Actions for their attorneys' fees and expenses. Atwood Decl., ¶35, Stipulation, ¶5.1.[7]

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."[8] *Accord In re Cont'l III Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1982) (market testers, best known by the negotiating parties, should determine the quantum of attorneys' fees). The amount negotiated and agreed to in fact reflects the parties'

---

[7]    Where there is no evidence of collusion and no detriment to the parties, a court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001).

[8]    As the Ninth Circuit has stated: "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

- 8 -

experience as to what is appropriate for the benefits obtained and will fairly compensate plaintiffs' counsel for their work in obtaining the substantial benefits for EMSC shareholders.

Importantly, the payment of attorneys' fees and expenses will not have a financial impact on Members of the Settlement Class.  The Merger has closed and all Settlement Class Members either sold their shares of EMSC prior to the completion of the Merger or received $64 in exchange for each share of EMSC common stock.  *See In re Resorts Int'l S'holders Litig.*, No. 9470, 1990 WL 154154, at *6 (Del. Ch. Oct. 11, 1990) ("Significantly, the attorneys' fees will be borne directly by [the company] and not by the class.").  Thus, the Court's role is different from a "statutory fee shifting" or a contested fee application case, in which the defendant has not agreed to pay plaintiffs' counsel's fee and thus reserves the right to challenge every item of work performed that underlies the requested fee.  Here, after arm's-length negotiations, defendants' counsel, who had every incentive to negotiate a fee award that was fair and in the best interest of their clients, negotiated and ultimately agreed with plaintiffs' counsel on a sum, and EMSC agreed to pay $900,000, subject to Court approval.[9]

---

[9]     The approval of settlements and attorneys' fees in the following cases and numerous others confirm the substantial benefits provided by plaintiffs' counsel in obtaining the additional disclosures, and fully support the fee negotiated here. *Carmona v. Bryant*, No. CV OC 0601251, slip op. at ¶11 (Ada Cnty. Idaho Mar. 9, 2007) (confirming agreement to pay fees and expenses in the amount of $2.6 million for publication of supplemental disclosures related to acquisition); *Dorn v. Mueller*, No. 10-cv-00925-WYD-CBS, slip op. at ¶13 (D. Colo. Feb. 28, 2011) (court awarded negotiated fee of $2 million where benefit consisted of additional disclosures in an Amendment No. 1 to the Registration Statement on Form S-4); *In re Longs Drug Stores Corp. S'holder Litig.*, No. C-08-02093, slip op. at ¶13 (Contra Costa Super. Ct. Mar. 26, 2009) (court awarded negotiated fee of

- 9 -

**B.     The Substantial Benefits Conferred on the Settlement Class Strongly Support the Award of Fees and Expenses**

Courts throughout the United States, including the United States Supreme Court, focus on the benefits achieved in the litigation as the primary factor in evaluating a fee request.  *See, e.g.*, *Hall v. Cole*, 412 U.S. 1, 5 (1973) (the payment of attorneys' fees is appropriate where plaintiffs' litigation results in a "'substantial benefit [for] members of an ascertainable class'").[10]

Courts have consistently placed a significant value upon non-monetary benefits obtained for shareholders, such as the enhanced disclosures here, particularly in the context of a corporate transaction involving the sale or exchange of the shareholders' stock.  *See, e.g.*, *TSC Indus.*, 426 U.S. at 449 (recognizing the importance of providing shareholders with all material information in order to promote the free exercise of the voting rights of stockholders); *Wis. Inv. Bd. v. Bartlett*, No. 17727, 2002 WL 568417, at *5-*6 (Del. Ch. Apr. 9, 2002) (supplemental proxy disclosures provided a therapeutic benefit to shareholders by allowing for informed shareholder vote), *aff'd*, 808 A.2d 1205 (Del. 2002).  Such results are rewarded by court-approved attorneys' fees and expenses.  *See, e.g.*,

---

$1.75 million where benefit consisted of additional disclosures); *In re AMC Entm't, Inc. S'holder Litig.*, No. 04-CV-220931, slip op. at ¶11 (Jackson Cnty. Mo. Dec. 2, 2005) (awarding $1.71 million in fees and expenses for additional disclosures); *IBEW Local 164 Pension Fund v, Hewitt Assocs., Inc.*, No. 10 CH 31612, slip op. at ¶14 (Cook Cnty. Ill. Feb. 15, 2011) ($850,000 awarded for additional disclosures).

[10]     *See also Sugarland Indus. v. Thomas*, 420 A.2d 142, 152 (Del. 1980); *Dow Jones & Co. v. Shields*, No. 184, 1991, 1992 WL 44907, at *2 (Del. Ch. Mar. 4, 1992).

*Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("the benefit need not be measurable in economic terms").

As the court in *Talley* noted:

> Considering all the circumstances presented, I have no difficulty concluding that the disclosures made here constitute adequate consideration for the settlement of the claims asserted and adequately support the fee requested.

*Talley Indus.*, 1998 WL 191939, at *15. Here, as a result of the filing and prosecution of the Actions, plaintiffs' counsel obtained substantial disclosures that enabled EMSC shareholders to make a clear, informed decision on the Merger including whether to seek appraisal. *See generally* Morris Decl. and Atwood Decl., ¶¶7, 32, 34, 40, 47-48, 50.

## V.    CONCLUSION

For all the reasons set forth herein, plaintiffs respectfully request that the Court finally approve the settlement and enter the [Proposed] Final Judgment.

DATED:  January 26, 2012                DYER & BERENS LLP
                                        ROBERT J. DYER III
                                        JEFFREY A. BERENS


                                        _____
                                               s/ Jeffrey A. Berens
                                        JEFFREY A. BERENS

                                        303 East 17th Avenue, Suite 300
                                        Denver, CO  80203
                                        Telephone:  303/861-1764
                                        303/395-0393 (fax)
                                        bob@dyerberens.com
                                        jeff@dyerberens.com

- 11 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
JEFFREY D. LIGHT
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
randyb@rgrdlaw.com
ricka@rgrdlaw.com
jeffl@rgrdlaw.com
dwissbroecker@rgrdlaw.com
egergosian@rgrdlaw.com

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)
rmaniskas@rmclasslaw.com

Attorneys for Colorado Federal Plaintiffs

- 12 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants as identified on the Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants as indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 26, 2012.

s/ Jeffrey A. Berens
Jeffrey A. Berens
DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)
jeff@dyerberens.com